a situation where if they lean means anything these are the facts in which it should apply. That's all. Thank you. Cases will argue, we'll take it under advisement. Call our next case, Julie Diaz v. Saucon Valley Manor Inc. at Al. Good morning, your honors. Can you wait one second so that everyone behind you can get a picture? Okay. Good morning, your honors. My name is Alan Fellheimer, the firm of Fellheimer and Eichen. My partner, John Jacko, is with me. Your honors. Did you reserve rebuttal time? Yes, I'm sorry. May I reserve five minutes? Yes. I know you're all familiar with the facts and what went on. The basic problem in this case is they never proved two essential elements required for a disability. Well, what they had to prove was alcoholism. Yes, ma'am. Because it was conceded that alcoholism was a disability. Yes, ma'am. So we really have just one issue. You want us to establish a federal evidentiary standard for alcoholism. Yes, ma'am. And I think there are two elements to that. One is the method of proof, i.e., what level of testimony is required. And secondly, did they prove that it impaired her ability to perform an essential life function? By conceding that it's a disability, didn't you concede the impairment piece? No, ma'am. No, sir. All we conceded was that alcoholism, if proven, is a disability. Right. And isn't a disability, by legal definition, something that impairs a major life function? Substantially impairs. Maybe we didn't. I don't believe so, sir. I believe you can have a disability. You'll notice, sir, Judge George, Mr. Jacko sat in what would normally be the lead counsel chair. And I'm sitting to his left. And the reason for that is I'm totally deaf in my right ear. But it's not a disability. Because I can do my job. But once you've said alcoholism is a disability, and disability is something that substantially interferes with major aspects of life, whatever, you have conceded that if proven, that this person was an alcoholic, they're disabled. You've proven it. It's there. I mean, the rabbit's in the hat. Then let's leave that for a section. How did they prove it? They wouldn't. There was not any medical testimony. Right. So you're starting with – I suppose a good place to start is our Marinelli opinion. Yes, sir. Which we discussed this. So maybe we apply that. Yes, sir. And we don't take a hardline rule, do we? No, but there are other courts that do after that. But let's look at what they did prove. And Marinelli said, well, they don't necessarily have to have medical testimony. But Marinelli's also distinguishable because that was in order to prove a disability. Right. Here we have a really, really unique – and I don't know if this is ever going to come up again in a federal court, because the issue usually is, is there a disability? Here, the issue is, there's a certain disease, has it been proven? That's right. Under federal law. So I don't know that we're at Marinelli as much as we're at, how do you prove alcoholism? You bring in medical testimony from a treating or diagnostic physician saying she's an alcoholic. How does that person opine? What do they use to opine as to whether someone is abusing alcohol or is an alcoholic? The answer to you, ma'am, lies in the medical knowledge of the person. That there are standard tests to determine whether a person is an alcoholic. Isn't that something that's made on the basis of behavioral reports, not on some blood test? In other words, is not a determination of alcoholism made by a physician or some other medical person who might be asked to diagnose based on reports from the individual and from family members or coworkers who say Sally gets drunk every day at 3 o'clock. She doesn't work on a regular basis. She can't get out of bed in the morning, et cetera. Let's look at the body of what this employer was told and what was new and what was shown to the court for those very purposes. Before you go there is what I've just postulated to you, correct or incorrect. I mean, isn't the basis of diagnosis the kinds of things that in effect are behavioral reports? Amount drunk, when drunk. I'm not competent to answer you. I'm not a physician. I'm not competent. Well, but look at the Centers for Disease Control. Look at what they use to differentiate between alcohol abuse and alcoholism. It is conduct, is it not? Okay. So let's deal with her conduct. So let's look at conduct. Let's look at conduct. What did she show? One, there was an incident a year before. One day she tested positive for drunk. One. Two, she, all the evidence was that she never, she testified that she never told her employer that she drank a lot. She testified, that's one. Her husband testified, yes, she drank at night, but she took care of the children well. She was an excellent mother, did everything fine, was never drunk when she went to the office, to the hospital, nursing home. That was testimony from her husband. Three, she admits she never told anybody about the matter. The judge said, well, she drank a quantity of drinks. There was nothing in the evidence, nothing about quantity. Mr. Feinhardt, aren't you, we seem to have slipped off of the kind of testimony that's needed, that is whether it's from a medical professional or not. And back to the question of impairment. It may be, in fact, the case that had the defense not stipulated, in effect, to an impairment, that things might or might not have been different. Who knows? But that's water under the bridge. Looking at the question, I understand, that he squarely before said is, can you make a case for alcoholism in the absence of putting a doctor on the stand? The question isn't so much what the behaviors were right now as whether other people are competent to say the same things and prove conduct to the jury as well as a doctor. Is that the question? Nobody, nobody testified in this case. Nobody, nobody testified in this case as to the amount of her drinking. The judge made a ruling about it without any evidence at all. Well, let me ask you a question. There's a couple pieces of evidence that I thought are important, and you can tell me why they are not. She testified that she couldn't stop drinking. After she got her DUI, she tried to stop because she didn't want to drink anymore, didn't want my family to have the consequence of my actions. I realized what a struggle was going to be because I couldn't stop. Then she testified that she was in detox. She went in, she was in detox for a week, and she was sick. She couldn't talk to anybody. To my mind, those two things send up red flares from which a jury could say, this is not just somebody who was abusing alcohol. And again, I'm going to the Center for Disease Control. This is someone who is an alcoholic. And the jury, it's a very unique situation. It's not the kind of thing where a blood test or, you know, and I don't know whether it's like depression or probably not because depression is treated with drugs. It's probably a very unique disease. But couldn't a red light go off for the jury and say, you know, if you go in detox and you're sick for a week, you're not just abusing alcohol. Isn't that sufficient? And why do we need an expert to get on the stand and say, oh, she was in detox for a week and was sick. Is she going to stop drinking? She's an alcoholic. First of all, the detox came later. But let me focus on something. The detox was in there. You made objections and it went no further than that. No, no, no. They refused to put the records in. All right. But that? They refused to put the records in. I know because there was other issues. Okay. But that evidence was before the jury, was it not? Ma'am, let me ask you a question. Was it not? Yes, ma'am. Ma'am, look at this from the employer's point of view for a moment. She doesn't tell the employer anything about this ever. You're putting the employer in a position where, you know, the employer is responsible for what they couldn't possibly know. Nobody ever told the employer that she was drinking. She tested once. Every binge drinker would. That's not the issue. We're here clearly on the issue of the ADA and alcoholism. We're not here on the issue of fairness to the employer as to whether they were told something. That's not before us. But the ADA says all we – first of all, in fairness, I have to tell you this is not relevant to anything, but I'll mention it. We were only hired 12 days before the trial. So we tried this case. It was another firm had the case long before we did. So the stipulation was we were sort of left with. But we didn't take the stipulation. Well, if I read the stipulation, you got – No, no, I agree with that. You didn't have the regarded as piece. So, I mean, whoever it was got something out of it. But the point of the matter is, Your Honor, that there was – I do not think there was sufficient evidence that she was an alcoholic. Can I ask a question? Because that is really – you've put your finger right on it. This is a sufficiency of the evidence challenge, right? When you get right down to it, this case is all about, on appeal, a sufficiency of the evidence challenge. So let me ask you this, Mr. Feldheimer. Is the defense position that, as a matter of law, there could never be sufficient evidence of alcoholism without medical testimony? No, sir. That's not your testimony? No, sir. But I think two things trouble me about what Judge Rendell asked me. The biggest thing is she's using evidence after the termination that no one could possibly know. Hold on just a second. I'll let you clarify and say what you'd like, Mr. Feldheimer. But I want to make sure I understood your answer to my question. You're acknowledging that there could be sufficient evidence of alcoholism. Only because that's what this Court has ruled previously. Let Judge Jordan ask his question, please. I thought he did. No, that wasn't his question. You've acknowledged, if I understand you right, that there could be sufficient evidence of alcoholism in the absence of medical testimony. I'm not talking about this specific case. I'm talking about in the abstract. You could have sufficient evidence of alcoholism presented for a jury under an ADA claim on the basis of lay testimony alone. Is that right? That's what this Court ruled in Marinelli, but other courts have ruled contrary. Okay. We believe that you should have medical testimony, but I have to face what this Court has previously ruled. Following Marinelli, I mean, isn't alcoholism, it's fairly commonplace, isn't it? I mean, there are some diseases where the regular person would have no knowledge. You can't see it. I mean, isn't alcoholism something people can understand? I don't think people can diagnose it, sir. I don't think that you can look at Mr. I don't think you can look at the, I'm thinking of the West Wing and the Vice President of the United States and West Wing was an alcoholic. He went to a meeting at the ADA in the basement of the White House. You wouldn't look at the Vice President of the United States and say, I think he's an alcoholic. You don't know that. You don't know without knowing an awful lot of facts. If you heard testimony, which the jury did hear. But the testimony the jury heard, the one cited by Judge Rendell, happened after she was terminated. No way for the employer to know that. No way for anybody to know that. And the other testimony is what she said, but she admitted she never told the employer, never told anyone that she was drinking that much or at all. She never told anyone. But you're kind of mixing up the issues. You're talking about employer notice and we're talking about just is this person an alcoholic? And can the jury find, make that finding without medical evidence? Is that what we're dealing with here? I'm sorry. That's what we're dealing with here, right? I don't believe. Do you need a doctor to get up and say this person's an alcoholic? Personally, I believe that's correct. But this court has ruled otherwise. Other courts have ruled, yes, you need a doctor to come up and say this is an alcoholic. But I think if you're going to say, if you're going to say that Marinelli says that you don't need a doctor, then I think that the amount of evidence that you need is much heightened. All right. You have reserved five minutes. We'll hear from you on rebuttal. Thank you, Mr. Feldheimer. May it please the Court. My name is Virginia Hardwick, together with my partner, Tiffany Benfer. We are representing Julie Diaz, the plaintiff and appellee in this case, and Ms. Diaz is here in the courtroom as well. Your Honors, I hear that you seem to have a good understanding of the reasons for our argument that substantial limitation of a major life activity is subsumed in the definition of alcoholism. Did you treat it as a live issue? We did not, Your Honor. At one point, and I don't know whether it was you or some other attorney at trial, but didn't somebody at trial for the plaintiff talk about substantial limitation? Yeah, I'm glad you raised that, Your Honor, and it was me. And so let me put it in context. At one point during a one-week trial, the words substantial limitation were used. It was in a colloquy with the court on a separate evidentiary issue of the extent to which we would be permitted to elicit testimony about the physical illness that Ms. Diaz had when she went into rehab and she was during the alcohol detoxification. So during that colloquy, out of the hearing of the jury, I used the phrase substantial limitation. That's a soundbite that the defendants have repeated again and again, and so what I would Well, it's a good soundbite for them, right? Because if you're treating it like it's an issue as if you have to do something about it, are they then within their rights to say, you know, not only did we not understand that substantial limitation was off the table, the plaintiff didn't understand that substantial limitation was off the table. Let me help the court understand why it was off the table, why we can show it was off the table. During that one-week trial, that was the only time those words were mentioned or any evidence was discussed about substantial limitation. And I would direct the court's attention to the closing arguments in the trial, and I know they're lengthy and your honors have a lot to read, but in that hundred and some pages in the appendix of the closing arguments, there is not one mention by either counsel for the defendants or myself about substantial limitation. The jury instructions didn't go into need for framing this. Exactly, your honor, and in fact, on the jury instructions, the parties in the court used the Third Circuit model instructions to frame the jury instructions, as parties usually do. And if your honors will compare the Third Circuit model instructions with the jury instructions in this case,  six of them, six of those paragraphs discuss what is a substantial limitation on a major life activity. The jury instructions that were given to the jury in this case had two sentences about disability, followed by the language from the stipulation saying that if you find, and I'm paraphrasing, but if you find that she's an alcoholic, alcoholism is a disability under the definition of the ADA. If anyone had thought that substantial limitation of a major life activity was something to be proven, we would have been instructing the jury on that and we would have been arguing it in the closing. Why shouldn't a jury, why shouldn't expert testimony be provided? I mean, this is a chronic disease, and state courts have routinely held that there needs to be a diagnosis when you have a chronic disease. Why shouldn't we say that all things considered, you should have an expert opine. It shouldn't be left to the jury to try to figure out whether this person has a disease. Your Honor, I would like the court to differentiate between the idea of a diagnosis and a fact finding by the jury. We're not asking the jury to make a diagnosis. Are you not? Are you not, in fact, saying she's not just an alcohol abuser, she's an alcoholic. That is a disease condition, and we want you to say she's got that disease condition. Well, what we're saying, Your Honor, is that, as many courts have said, the jury can consider symptoms of a condition that many jurors are familiar with, and Judge Rice noted that during the voir dire, many hands went up on the question of who has alcoholism in their family. So that the jury can consider the symptoms and the treatment. But it's not visible to the naked eye, though. And in those cases, don't you generally want to have an expert come in to help the jury understand the evidence? Your Honor, I don't think the question of whether something is visible to the naked eye is the relevant question. In Marinelli, which set a standard before the ADA Amendments Act, so if anything, it was a too difficult a standard on proof of disability. But using Marinelli... In Marinelli, they had a person who was missing an arm, right? No, no, no, Your Honor. In Marinelli, we had somebody with arm pain. Now, you can't look at somebody and say their arm hurts. But what you can do is understand that when they testify about the symptoms and how it affects their life, you can understand because arm pain is something in the understanding. But if you parallel Marinelli with what we have here, in Marinelli we said, okay, disability can be proven without an expert because it requires a finding of a substantial interference. And that is clearly a matter of fact. Substantial interference, disability. It's not a diagnosis. Here you say alcoholism. And you look at what is that? And the Center for Disease Control has a fine line between abuse and alcoholism, the disease. It's not just, you know, say it's fact-finding. What categorically are the facts that everyone agrees, like substantial interference, are the hallmarks and need be shown for alcoholism? And by the way, the jury was not given any indication as to how they were defined. That's correct. They were not, Your Honor, because the understanding, the ruling of the court and the understanding of the parties is that alcoholism was in the common sense understanding of a jury. And that a jury with a common, you know, Your Honor, use the word common sense. Is a chronic disease, is there such a thing as a common sense? That's right. That's an extraordinary position. I mean, common sense of lung cancer, common sense of, I mean, I don't think, you know, between alcohol abuse and alcoholism, I don't know how much it is within the common sense of a jury. Well, I think it is, Your Honor, when a patient has an extraordinary type of treatment for a disease. It is a common sense fact. But there was no extraordinary treatment here for this disease. Oh, but Your Honor, I think that going to inpatient rehab. She was ordered by the court to do that. Oh, okay. That is a misstatement of the record by the defendants. And so let me help you understand. She was not ordered by the court. And there was extensive testimony by Ms. Diaz that she had a DUI. She went to outpatient treatment. The record says that on her first day of outpatient treatment, her counselor recommended to her that she go to inpatient treatment. She told her supervisor that. And then, because Ms. Diaz is a woman of limited financial means and had no health insurance, in order to pay for inpatient treatment, her probation officer suggested that the way to facilitate that was to extend her probation so that she could receive public funding for her rehabilitation, her inpatient rehabilitation. Now, the evidence that the defendants have cited to say she was ordered to rehab is simply the letter directing her to go to court. And she testified and explained, wow, when I got that letter, I was worried because it says violation of probation. And she explained that then she was led to understand that the only reason that designation was given was to facilitate the financial arrangements needed. Is there some practical reason that maybe we're missing why you wouldn't just call an expert in this kind of case? It seems like you have one fact to prove. And an expert could get up and blast that out in five minutes. We might have. In 20-20 hindsight, I wish we had. And yet, the question is, is it legally required? And, you know, is there an evidentiary rule requiring it? And I think the answer to that is no. And especially in this sort of situation, in light of the ADA Amendments Act, in which Congress has specifically overruled cases that created hurdles to the proof of disability. So assume we were inclined to agree with you. Ms. Hardwick can say, well, this is something which is behaviorally based and other people can test about behavior which could lead a jury to rationally conclude that this has gone beyond alcohol abuse and what we're dealing with here is a chronic alcoholic. Assume that that was the decision we came to. Are we dealing with the sufficiency of the evidence question here about whether or not you put sufficient evidence in to show that to this jury? In other words, should we be reviewing the record to say, for example, there wasn't evidence about how much she drank, the judge made a mistake when he made a reference to that, that wasn't in front of the jury, what we're left with is she decides to check herself in. I mean, is that how we should be looking at the case? Well, Your Honor, yes, it would be a sufficiency of the evidence and the Court is well aware of the high standard on reversal of that issue. And the evidence... Although on a directed verdict, it isn't that high a standard. Would it be? Well, yes, Your Honor, it's a standard of under the facts most favorable to the non-moving party, the plaintiff in this case, could any rational jury have made this decision. And in fact, this rational jury did make the decision. Well, that's indeed the question, right? When you say this rational jury, that's sort of assuming what we're being asked to decide. And so the question I'm trying to put to you is, and let me try it differently, is it legitimate for Mr. Fellheimer to bring in impairment kinds of questions in the context of, can we look at those kinds of issues again in the context of the sufficiency of the evidence to show this was alcoholism and not alcohol abuse? In other words, in the totality of the evidence, is it relevant and important that by her own family's testimony she kept a spotless house, that she was a good mother to her children, that she was late for work only once, that the worst you could say about her at work was that she was occasionally slow? If you look at all that evidence in context, is it... Can we look at that evidence when we're asking the question, was there sufficient evidence to show this had crossed the line from abuse to a disease? Your Honor, that evidence certainly is part of the totality of the evidence, and it perhaps shows that Ms. Diaz was an extremely high-functioning alcoholic. But the totality of the evidence also... It's legitimate to look at, though, right? The plaintiff also needs to demonstrate that they were capable of doing the job, so that was part of the proofs in that case. But part of the totality of the evidence is also that she began drinking as a child, she got drunk for the first time when she was 9 years old, that she attended Alcoholics Anonymous, that she went to inpatient treatment, and that she was physically sick from alcohol withdrawal. So there's a large body of evidence, and I haven't said it all. Her husband and her brother described her as an alcoholic. And in fact, during the entire trial, as noted in the trial court's decision, the defendants argued that she was an alcoholic who did her job so poorly she deserved to be fired. And they took that same position, Your Honors, before the EEOC. Someplace I have to cite to the record on that. So that was the position that everybody took through the trial. The position has changed somewhat on the appeal, that perhaps she wasn't an alcoholic. How should we articulate this? I don't want to speak for anybody but me, but is it a fair and equitable ruling to say that employers can be on the hook for what is, in effect, self-diagnosis if there's no medical person that comes in, that they can be liable under the ADA because on the strength, essentially, of the person coming in and saying, Yeah, I know I do my job well, and I know I'm a good mom, and I know I'm a good housekeeper, and I know I do all the things that ordinary people do, and I do them just fine. But trust me, I'm an alcoholic. And that's sufficient evidence. Now, I recognize I'm not giving you your due. You've listed the other things. But how do we frame a rule here that doesn't put employers unnecessarily at risk of people just coming in and saying, Hey, trust me, I'm sick? Well, I have a few things to say to that, Your Honor. First of all, there is evidence in the record that the Keystone Center, the intensive inpatient facility at which Ms. Diaz spent a month, sent a confirming letter to Saucon Valley saying that she was there. So it's not only the plaintiff's word about it. She was there. Nobody's disputing that she was there. The question is, was she an alcoholic? And the jury looked at the evidence of that and concluded that alcoholism was something they understood well enough and were familiar with and that she was an alcoholic. And if I could just finish, the employer is not on the hook unless the jury also reaches the conclusion that the retaliatory action was because of the disability. So it's not that the employer is on the hook for something without any causal basis. The other thing that we have here that just isn't going to be in other cases is the concession that alcoholism is a disability, which takes the whole impairment and the actual activity vis-à-vis the workplace off the table. That's right, Your Honor. And it was a significant concession on the plaintiff's part as well to give up the regarded as claim, which may have been an easier way to go in this case. So it was a negotiated and consented to concession, and the defendants never objected to the jury instructions, never argued at trial. All right. Thank you. Thank you, Your Honor. Yes, ma'am. Excuse me, Judge Jordan. The jury is being asked to make a diagnosis. You know, one of the things that Judge Rice determined in his opinion, mentioned in his opinion, was a half gallon of alcohol a day. The only place that appears, the only place... And the judge dealt with that later. I think he acknowledged that he had misspoken. But the point, there's a point to this, was in the discharge memorandum, which the plaintiff decided not to put in, because it doesn't say she's an alcoholic. They could have so easily brought in the doctor who treated her, and he could have said it, but the fact is he wouldn't. And they didn't call him. So the question arises, if that, why didn't... This is a civil case. The defense has access to compulsory process. How come the defendants didn't get either their own expert or get the treating physician and a depositioner on the stand to say she's not an alcoholic? She may be an abuser, but she's not an alcoholic. Your Honor, I wish I had enough time. I asked for an extension. They opposed it. I asked for a couple of weeks to be able to do all that when I was hired, 12 days before the trial. The judge, in fact, didn't give me the extension. He moved the trial closer to us. I didn't have a chance. I would have done it. I agree with you. Okay. Well, then if you agree with me, then what we're really dealing with here is not the problem of a legal standard. Maybe it's just a problem of tactical decisions that went awry. Correct? No, sir. I don't agree with that because the burden is on the plaintiff to prove the case and to prove that she has that disease. But on appeal, we've got the sufficiency of the evidence standard, which is the very high bar for you to mount. Yes, ma'am. But you also have the problem that there is no evidence. The evidence is not there. You're looking at something. The only evidence Your Honor just cited was what she said and then the testimony, what my opponent just said, which was uncorroborated. She said when Judge Zito sent her to rehabilitation because of a violation of the ARD, that somehow that was something she engineered with the ---- Assume that's true. But the jury hears that. Assume it's true that it was engineered or assume it wasn't true, that she, in fact, is getting DUIs, which is evidence that she's got an alcohol issue. If the question is could any rational jury come to the conclusion, what is irrational about a jury seeing a person who's in trouble with the law for driving under the influence, checked into detox, doing so with the advice of a treating physician and with the encouragement of a probation officer? I mean, is it beyond the pale for a jury to look at that and say in the absence of any contrary evidence from a medical person, yeah, I think that's ---- There was no evidence of the treating physician telling her to go to rehab. There was no evidence of that. There was no treating physician brought into the courtroom, Your Honor. There was nobody. Nothing. You have all you have is her personal testimony. She didn't bring the probation officer in. She didn't bring in any treating physician. None of those people testified. There was nothing. And you're asking this jury to make a medical diagnosis. Your Honor, almost half the college students go binge drinking. You'd say they're alcoholics. It's not ---- The difference between alcoholism and alcohol abuse is a medical determination. It's a diagnosis. Just out of curiosity, you brought all this up in your Rule 50A motion at the end of the plaintiff's case. Did you argue this to the jury, that there's no evidence of her alcoholism? Yes, sir. In your closing statement? Yes, sir. We tried. But we also brought it up with the judge in our Rule 50 motion. But the instructions didn't lay out exactly what the jury had defined vis-à-vis alcoholism. We have submitted instructions, and our opponents submitted instructions, and the judge decided to do his own. The jury's entitled to believe the plaintiff, right? It's entitled to believe any witness that wishes. Yes, sir. So if she gets up on the stand and says, you know, I'm an alcoholic. I've been drinking since I was a child. I can't control it. I had to check myself into detox. At what point do we say that's enough, and at what point do we say that's not enough? I don't think she can say I'm an alcoholic, just like she can't say on her own knowledge. I have multiple melanoma. She's not competent to testify after a medical determination. You've put your finger right on the point, right? This is a disease which, unlike melanoma, is not detected by taking a biopsy, looking at it under a microscope, and asking a pathologist to give you a read. This is a disease which is determined, the existence of which is determined based on behavioral markers and conduct. So why is she any less qualified to say? In fact, I guess I'd ask it this way. Since the treating doctor would be listening to her most of all to decide whether or not she was an alcoholic, why isn't her testimony enough standing on its own if the jury believes it? Your Honor, you're taking psychiatric and similar disciplines back a century. Their ability to diagnose is better than that. And, Your Honor, the answer is no. You can't self-diagnose alcoholism. But she didn't get on the stand and say, I'm an alcoholic. She said, I did this, I did that, this happened to me, I did this, I've been doing this. So she recited the behaviors. She didn't say, trust me, I'm an alcoholic, and get off the stand. But there was contrary evidence as well. But the fact is there was not enough evidence to show she had that disease. First of all, I don't think the jury is capable of doing the diagnosis for that expert testimony.